FILED

08 JUN 17 PM 3:22

CLERK, U.S. DISTRICT ...
SOUTHERN DISTRICT OF CALIFORNIA

BY: &a
DEPUTY

"VIA FAX"

1  Robert F. Clarke (Cal. Bar No. 79881)
   **PHILLIPS & ASSOCIATES**
2  3030 North Third Street, Suite 1100
   Phoenix, Arizona 85012
3  Telephone: (602) 258-8900 ext. 328
   Facsimile: (602) 288-1632
4  bobc@phillipslaw.ws

5  Attorneys for Plaintiffs

6

7            IN THE UNITED STATES DISTRICT COURT

8               DISTRICT OF CALIFORNIA

**'08 CV 1075 BEN CAB**

9  DIANE KNIGHT and MORGAN KNIGHT,       Cause No.: _____
   wife and husband,
10
            Plaintiffs,                       **COMPLAINT**
11                                              **-AND-**
                                        **DEMAND FOR JURY TRIAL**
12  vs.

13  ELI LILLY AND COMPANY, an Indiana
    corporation,
14
            Defendant.

15
        Plaintiffs allege as follows:
16
                   **PARTIES AND JURISDICTION**
17
        1.    Subject matter jurisdiction is founded on diversity of citizenship and amount in
18
    controversy.
19
        2.    Plaintiffs Diane Knight and Morgan Knight, wife and husband, are citizens of the
20
    State of California, residing and domiciled in San Diego County, California.
21
        3.    Plaintiff Diane Knight was prescribed with and ingested the prescription medication
22
    Zyprexa® (olanzapine) (hereinafter, "Zyprexa"), and suffered personal injuries as a result thereof
23
    in the Southern District of California.
24
        4.    For purposes of this Complaint, unless otherwise specified all references to Plaintiff
25
    and/or Plaintiffs refer to Plaintiff Diane Knight.
26
        5.    Defendant Eli Lilly and Company ("Lilly") is a corporation domiciled in the State of
27
    Indiana, with a principal place of business at Lilly Corporate Center, in the City of Indianapolis,
28

                              - 1 -

County of Marion, State of Indiana.

6.    The matter in controversy, exclusive of interest and costs, exceeds the sum specified in 28 U.S.C. § 1332.

7.    There is complete diversity of citizenship.

**GENERAL ALLEGATIONS**

8.    At all times relevant herein, Lilly was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Zyprexa, and other products for use by the mainstream public, including Plaintiff.

9.    Zyprexa was manufactured, marketed, distributed and sold to Plaintiff by Lilly and/or Lilly's representatives.

10.    In September 1996 Lilly obtained approval from the U.S. Food and Drug Administration (hereinafter the "FDA") to market Zyprexa for treatment of adults with schizophrenia with a target dosage of 10 mg/d. In 2001, Zyprexa updated its labeling to include a newly approved indication for the short-term treatment of acute manic episodes associated with Bipolar I Disorder with recommended doses of 10-20 mg/d. Zyprexa has never been indicated for the treatment of children for any purpose.

11.    Despite its limited approval for marketing, in eight years Zyprexa has become the third-best selling drug in the world. Zyprexa's worldwide sales in 1997, its first full year on the market were $500 million. According to Lilly's Form 10K, 2004 worldwide Zyprexa sales exceeded $4.4 billion, which made Zyprexa Lilly's top selling drug by over $3.2 billion.

12.    Lilly's own pre-clinical studies regarding Zyprexa and medical literature related to antipsychotic drugs dating to the 1950s demonstrate that Zyprexa and other antipsychotics cause weight gain and hyperglycemia. Further, immediately after Zyprexa's release, Lilly became aware of large numbers of adverse event reports ("AERs") on file with the FDA's Medwatch database involving diabetes-related illnesses associated with the use of Zyprexa. Specifically, there were 200 AERs after two years of marketing, 400 AERs after three years and nearly 600 diabetes-related AERs in Zyprexa's fourth year of marketing, all of which were reported to the FDA and known to Lilly.

1  Additional evidence that Lilly knew of Zyprexa's propensity to cause diabetes and yet failed to

2  adequately warn physicians and patients, including Plaintiffs, is the fact that in April 2002, nearly

3  a year and a half before it first warned of the risk of diabetes in the United States, Lilly changed its

4  labeling in the United Kingdom and Japan to include warnings regarding the association between

5  the use of Zyprexa and diabetes-related injuries. Lilly has been required to revise the labeling of

6  Zyprexa seventeen times since its introduction to the market.

7       13.    On September 11, 2003, the FDA informed all manufacturers of atypical

8  antipsychotic drugs, including Lilly, that due to an increasing prevalence of diabetes-related illnesses

9  associated with this class of drugs, that all labeling must bear the following language in the Warnings

10 section:

> Hyperglycemia, in some cases extreme and associated with
> ketoacidosis or hyperosmolar coma or death, has been reported in
> patients treated with atypical antipsychotics. Assessment of the
> relationship between atypical antipsychotic use and glucose
> abnormalities is complicated by the possibility of an increased
> background risk of diabetes mellitus in patients with schizophrenia
> and the increasing incidence of diabetes mellitus in the general
> population. Given these confounders, the relationship between
> atypical antipsychotic use and hyperglycemia-related adverse events
> is not completely understood. However, epidemiologic studies
> suggest an increased risk of treatment emergent
> hyperglycemia-related adverse events in patients treated with atypical
> antipsychotics. Precise risk estimates for hyperglycemia-related
> adverse events in patients treated with atypical antipsychotics are not
> available.
>
> Patients with an established diagnosis of diabetes mellitus who are
> started on atypical antipsychotics should be monitored regularly for
> worsening of glucose control. Patients with risk factors for diabetes
> mellitus (e.g., obesity, family history of diabetes) who are starting
> treatment with atypical antipsychotics should undergo fasting blood
> glucose testing at the beginning of treatment and periodically during
> treatment. Any patient treated with atypical antipsychotics should be
> monitored for symptoms of hyperglycemia including polydipsia,
> polyuria, polyphagia, and weakness. Patients who develop symptoms
> of hyperglycemia during treatment with atypical antipsychotics
> should undergo fasting blood glucose testing. In some cases,
> hyperglycemia has resolved when the atypical antipsychotic was
> discontinued; however, some patients required continuation of
> anti-diabetic treatment despite discontinuation of the suspect drug.

     14.    Despite the FDA's mandate that Lilly immediately warn of the dangers described

above, Lilly waited an additional six (6) months, until March 1, 2004, to send prescribing physicians

1    a "Dear Doctor Letter" advising of the new warnings. Further, the foregoing warning did not appear

2    in the Physicians' Desk Reference until the 2005 edition.

3        15.    In March 2004, the U.S. Attorney for the Eastern District of Pennsylvania commenced

4    an investigation into Lilly's marketing practices concerning Zyprexa. Lilly has also received a grand

5    jury subpoena from the Office of Consumer Litigation, Department of Justice, concerning the

6    marketing and promotional practices with respect to a different Lilly drug.

7        16.    Under applicable statutes and regulations, the manufacturer of a prescription drug

8    regulated by the FDA may not promote or market the use of the drug for purposes or in dosages other

9    than those approved by the FDA. Uses of a prescription drug for purposes other than those approved

10   by the FDA are referred to as "off-label" uses. Promotion by a drug manufacturer of "off-label" uses

11   of prescription drugs is strictly illegal and contrary to the explicit policies and regulations of the

12   United States Government.

13       17.    Upon information and belief, Lilly promoted the drugs taken by Plaintiff by

14   employing the illegal direct solicitation of physicians for off-label uses and making false statements

15   to physicians and pharmacists concerning the efficacy and safety of Zyprexa for off-label uses. As

16   a result of Lilly's illegal schemes, Plaintiff was prescribed Zyprexa for an unnecessary and/or

17   off-label use.

18       18.    There is no valid scientific evidence to support the contention that Zyprexa is safe and

19   effective for treatment of any off-label use, including any use in children. There is no valid scientific

20   evidence concerning the therapeutic equivalence of Zyprexa for any off-label use, including any use

21   in children.

22       19.    Lilly did business in the State of California; made contracts to be performed in whole

23   or in part in California and/or manufactured, tested, sold, offered for sale, supplied or placed in the

24   stream of commerce, or in the course of business materially participated with others in so doing,

25   Zyprexa, which Lilly knew to be defective, unreasonably dangerous and hazardous, and which Lilly

26   knew would be substantially certain to cause injury to persons within the State of California thereby

27   negligently and intentionally causing injury to persons within California, and as described herein,

28

- 4 -

1    committed and continues to commit tortious and other unlawful acts in the State of California.

2        20.    Lilly sold or aided and abetted in the sale of Zyprexa which was and is defective and

3    unreasonably dangerous. At all pertinent times, Lilly knew, or should have known, that Zyprexa was

4    and is hazardous to human health.

5        21.    Lilly, through its funding and control of certain studies concerning the effects of

6    Zyprexa on human health, their control over trade publications, promoting, marketing, and/or

7    through other agreements, understandings and joint undertakings and enterprises, conspired with,

8    cooperated with and/or assisted in the wrongful suppression, active concealment and/or

9    misrepresentation of the true relationship between Zyprexa and various diseases, all to the detriment

10    of the public health, safety and welfare and thereby causing harm to the State.

11        22.    Specifically, and in addition to the allegations above, Lilly knew of the hazards

12    associated with Zyprexa; affirmatively and actively concealed information which clearly

13    demonstrated the dangers of Zyprexa and affirmatively misled the public and prescribing physicians

14    with regard to the material and clear risks of Zyprexa; they did so with the intent that prescribing

15    physicians would continue to prescribe Zyprexa; they then well knew that prescribing physicians

16    would not be in a position to know the true risks of Zyprexa; and they knew that prescribing

17    physicians would rely upon the misleading information that they promulgated.

18        23.    At all pertinent times, Lilly purposefully and intentionally engaged in these activities,

19    and continues to do so, knowing full well that when the general public, including Plaintiff, uses

20    Zyprexa as Lilly intended, that Plaintiff would be substantially certain to suffer disease, injury and

21    sickness.

22        24.    The statements, representations and promotional schemes publicized by Lilly were

23    deceptive, false, incomplete, misleading and untrue. Lilly knew, or should have known, that its

24    statements, representations and advertisements were deceptive, false, incomplete, misleading and

25    untrue at the time of making such statements. Lilly had an economic interest in making such

26    statements. Neither the Plaintiff nor the physicians in California who prescribed Zyprexa had

27    knowledge of the falsity or untruth of Lilly's statements, representations and advertisements when

28

- 5 -

1  prescriptions for Zyprexa were written; moreover, the Plaintiff and the Plaintiff's physician had a

2  right to rely on Lilly's statements, representations and advertisements.  Each of the statements,

3  representations and advertisements were material to the Plaintiff's purchase of Zyprexa in that the

4  Plaintiff would not have purchased Zyprexa if Plaintiff had known that Lilly's statements,

5  representations and advertisements were deceptive, false, incomplete, misleading and untrue. These

6  acts were designed to and did allow Lilly to earn substantial income from the sale of Zyprexa.

7      25.    Plaintiff had a right to rely upon the representations of Lilly and were directly and

8  proximately injured by such reliance, all as described above.

9      26.    Had Plaintiff been adequately warned of the potential life-threatening side effects,

10  he/she could have chosen to request other prescription medications and avoided Zyprexa's potential

11  life-threatening side effects.

12      27.    Plaintiff were prescribed Zyprexa by physicians authorized to prescribe Zyprexa,

13  ingested Zyprexa as prescribed, and as a result suffered damages and injury.

14      28.    Lilly negligently, recklessly and wantonly failed to warn Plaintiff and the general

15  public, of the risks associated with taking Zyprexa.  Lilly failed to do so even after various studies,

16  including their own, showed that there were problems concerning the risks of diabetes and

17  diabetes-related injuries associated with Zyprexa.

18      29.    Lilly endeavored to deceive Plaintiff, and the general public, by not disclosing the

19  findings of the various studies, including its own, that revealed problems concerning the dangers of

20  Zyprexa.

21      30.    Further, Lilly did not provide warnings and instructions that would have put Plaintiff,

22  and the general public, on notice of the dangers and adverse effects caused by Zyprexa.

23      31.    Lilly designed, manufactured, distributed, sold and/or supplied Zyprexa into the

24  stream of commerce in a defective and unreasonably dangerous condition, taking into consideration

25  the utility of the drug and the risk to Plaintiff and the general public.

26      32.    Zyprexa as designed, manufactured, distributed, sold and/or supplied by Lilly was

27  defective as marketed due to inadequate warnings, instructions and/or labeling.

28

33.    Zyprexa as designed, manufactured, distributed, sold and/or supplied by Lilly was defective due to inadequate testing before and after Lilly's knowledge of the various studies, including their own, evidencing the rightful concerns over the risks of diabetes and diabetes-related injuries associated with Zyprexa.

**COUNT ONE**

**(STRICT PRODUCTS LIABILITY)**

34.    Lilly is liable as the manufacturer, distributor and/or seller of the drug Zyprexa because Zyprexa, when sold, was in a defective and unreasonably dangerous condition. Lilly owed a strict duty to Plaintiff not to harm him/her through the use of the drug Zyprexa.

**A.    DESIGN DEFECT**

35.    Zyprexa was defective in design and/or formulation in that, when it left the hands of Lilly and/or its representatives, the foreseeable risks of serious harm posed by the drug outweighed its alleged benefits.  The foreseeable risks of serious harm were so great that Plaintiff, and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Zyprexa.

36.    Zyprexa was placed into the stream of commerce by Lilly acting through authorized agents, servants, employees and/or representatives.  Plaintiff was prescribed Zyprexa by her physician and used the drug in a manner reasonably foreseeable by Lilly.

37.    The Zyprexa ingested by Plaintiff was expected to and did reach Plaintiff without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.  As a result of the use of Zyprexa, Plaintiff suffered severe, permanent and disabling injuries and related damages.

**B.    MARKETING DEFECT-INADEQUATE AND IMPROPER WARNINGS**

38.    Zyprexa was marketed to physicians to be prescribed to their patients and was marketed and advertised directly to the consuming public. Zyprexa, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper warnings regarding the serious risks of ingesting the drug. Further, Lilly failed to warn of these serious risks after Lilly

1   had knowledge of same. The information provided to consumers did not reflect Lilly's knowledge

2   that Zyprexa was not safe and effective as indicated in its aggressive marketing campaign, nor were

3   consumers made aware that ingesting the drug could result in serious injury, pain and discomfort

4   and/or death. Full and proper warnings that accurately and fully reflected the risks of serious injury

5   and/or sudden death due to the ingestion of Zyprexa should have been disclosed by Lilly.

6       39.   Plaintiff was prescribed Zyprexa by her physician, and used the drug in a manner

7   reasonably foreseeable by Lilly. Zyprexa was expected to and did reach Plaintiff without substantial

8   change in its condition as tested, manufactured, designed, labeled, packaged, marketed and

9   distributed. Plaintiff was not aware of, and could not have reasonably discovered, the unreasonably

10   dangerous nature of Zyprexa.

11      40.   At all times herein mentioned, Defendant had an obligation not to violate the law, in

12   the manufacture, design, formulation, compounding, testing, production, processing, assembly,

13   inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and

14   warning of the risks and dangers of the aforementioned products.

15      41.   At all times herein mentioned, Defendant violated the Federal Food, Drug and

16   Cosmetic Act, 21 U.S.C. Section 301, et seq., related amendments and codes and federal regulations

17   provided thereunder, the Sherman Food, Drug and Cosmetic Law, California Health and Safety Code

18   Sections 110290, 110390, 110395, 110398, 110400 and 111330, formerly Sections 1750, 1790, et

19   seq., and regulations promulgated thereunder, and other applicable laws, statutes and regulations.

20      42.   Plaintiff, as a purchaser and consumer of Zyprexa, is within the class of persons the

21   statutes and regulations described above are designed to protect, and Plaintiff's injuries are the type

22   of harm these statutes are designed to prevent.

23      43.   Defendant failed to meet the standard of care set by the following statutes and

24   regulations, which were intended for the benefit of individuals such as Plaintiff, making Defendant

25   negligent per se:

26           a.   The labeling lacked adequate information on the use of Zyprexa, even though

27             the Defendants were aware of the widespread use of Zyprexa. [21 C.F.R.

28

Section 201.56(a) and (d)].

b. The labeling lacked adequate information on the approximate kind, degree and duration of expected improvement, alone or in combination in violation of 21 C.F.R. 201.57(c)(3)(i).

c. The labeling did not state that there was a lack of evidence to support the common belief of the safety and advocacy of Zyprexa [21 C.F.R. 201.57(c)(3)(i) and (iv) and (c)(2)].

d. The labeling failed to add warnings for serious cardiovascular, and cerebrovascular events and death as soon as there was reasonable evidence of their association with the drug [21 C.F.R. 201.57(e)].

e. There was inadequate information for patients for the safe and effective use of Defendant's drugs, in violation of 21 C.F.R. 201.57(f)(2).

f. There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendant's drugs in violation of 21 C.F.R. 201.57(f)(1).

g. The labeling was misleading and promotional in violation of 21 C.F.R. 201.56(b).

h. The labeling was misleading in violation of California Health and Safety Code Sections 11130 and 110290.

i. Defendant's advertising and representations regarding the subject drug product were false and misleading in violation of Health and Safety Code Sections 110390 and 110290, and Civil Code Section 1770(a)(5).

j. There was a failure to warn and/or consult as required by California Code of Regulations § 1707.2.

44. As the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Zyprexa, as manufactured and/or supplied by Lilly and its representatives, Plaintiff has suffered severe, permanent and disabling injuries and related damages.

- 9 -

**COUNT TWO**

**(COMMON LAW FRAUD)**

45.     Lilly made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth.  Lilly had in its possession adverse drug event reports, drug studies, and other documentation about Zyprexa and yet made the following misrepresentations:

    a.   Misrepresented  the frequency of Zyprexa-related adverse event reports or occurrences in the Zyprexa label, package insert or PDR label;

    b.   Misrepresented the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Zyprexa;

    c.   Misrepresented the efficacy of Zyprexa;

    d.   Misrepresented the number of adverse events and deaths reported with the use of Zyprexa;

    e.   Misrepresented the nature, seriousness, and severity of adverse events reported with the use of Zyprexa.

    f.   Lilly's misrepresentations were the proximate and/or producing cause of Plaintiff's injuries.

46.     Plaintiff had a right to, and did rely, upon those, and other material misrepresentations.

47.     Lilly intended that these misrepresentations be relied upon by physicians, including Plaintiff's physician, healthcare providers and consumers.

48.     Plaintiff did rely upon the misrepresentations that caused her injuries.

**COUNT THREE**

**(NEGLIGENCE)**

49.     Lilly owed Plaintiff a legal duty in connection with its development, manufacture, and distribution of Zyprexa.  Lilly breached those duties, proximately causing Plaintiff's injuries.  Specifically, Lilly failed to meet its duty to use reasonable care in the testing, creating, designing,

1   manufacturing, labeling, packaging, marketing, selling, and warning of Zyprexa. Lilly is liable for

2   acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not

3   limited to the following:

4         a.    Failure to adequately warn Plaintiff and Plaintiff's physicians of the known

5             or reasonably foreseeable danger that Plaintiff would suffer a serious injury

6             or death by ingesting Zyprexa;

7         b.    Failure to adequately warn Plaintiff and Plaintiff's physician of the known or

8             reasonably foreseeable danger that Plaintiff would suffer a serious injury or

9             death by ingesting Zyprexa in unsafe doses;

10        c.    Failure to use reasonable care in testing and inspecting Zyprexa so as to

11            ascertain whether or not it was safe for the purpose for which it was designed,

12            manufactured and sold;

13        d.    Failure to use reasonable care in implementing and/or utilizing a reasonably

14            safe design in the manufacture of Zyprexa;

15        e.    Failure to use reasonable care in the process of manufacturing Zyprexa in a

16            reasonably safe condition for the use for which it was intended;

17        f.    Failure to use reasonable care in the manner and method of warning Plaintiff

18            and Plaintiff's physicians as to the danger and risks of using Zyprexa in

19            unsafe doses;

20        g.    Such further acts and/or omissions that may be proven at trial.

21      50.    The above-described acts and/or omissions of Lilly were a direct and proximate cause

22  of the severe, permanent and disabling injuries and resulting damages to Plaintiff.

23                               **COUNT FOUR**

24                   **(NEGLIGENT MISREPRESENTATION)**

25      51.    Lilly failed to communicate to Plaintiff and/or the general public that the ingestion

26  of Zyprexa could cause serious injuries after it became aware of such risks.  Instead, Lilly

27  represented in its marketing that Zyprexa was safe and effective.

28

- 11 -

52.   Plaintiff brings this cause of action against Lilly under the theory of negligent misrepresentation for the following reasons:

    a.   Lilly, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Zyprexa in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Lilly made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

    b.   The above misrepresentations were made to Plaintiff, as well as the general public;

    c.   Plaintiff and their healthcare providers justifiably relied on Lilly's misrepresentations; and

    d.   Consequently, Plaintiff ingested Zyprexa to her detriment. Lilly's negligent misrepresentations proximately caused Plaintiff's injuries and monetary losses.

## COUNT FIVE

## (MISREPRESENTATION)

53.   Lilly is engaged in the business of selling Zyprexa. By its advertising, labels, or otherwise, Lilly has made to Plaintiffs, and the public, misrepresentations of material fact concerning the character or quality of Zyprexa.

54.   Plaintiff justifiably relied on Lilly's misrepresentations in purchasing Zyprexa. Plaintiff has suffered physical harm proximately caused by Lilly's misrepresentations regarding the character or quality of Zyprexa.

## COUNT SIX

## (EXPRESS WARRANTY)

55.   Lilly is a merchant and/or seller of Zyprexa. Lilly sold Zyprexa to consumers, including Plaintiff, for the ordinary purpose for which such drugs are used by consumers. Lilly made representations to Plaintiff about the quality or characteristics of Zyprexa by affirmation of fact,

1  promise and/or description.

2      56.    The representations by Lilly became part of the basis of the bargain between Lilly and

3  Plaintiff. Zyprexa did not comport with the representations made by Lilly in that it was not safe for

4  the use for which it was marketed. This breach of duty by Lilly was a proximate cause of the injuries

5  and monetary loss suffered by Plaintiff.

6  **COUNT SEVEN**

7  **(IMPLIED WARRANTY)**

8  **A.**    **WARRANTY OF MERCHANTABILITY**

9      57.    Lilly is a merchant and/or seller of Zyprexa. Plaintiff purchased Zyprexa from Lilly

10  and used Zyprexa for the ordinary purpose for which it is used by consumers. At the time it was

11  purchased by Plaintiff, Zyprexa was not fit for the ordinary purpose for which such drugs are used.

12  Zyprexa was not fit for the ordinary purpose for which such drugs are used because it was not

13  manufactured, designed or marketed in a manner to accomplish its purpose safely. Lilly's breach

14  of its implied warranty of merchantability caused Plaintiff's injuries and monetary losses.

15  **B.**    **WARRANTY OF FITNESS**

16      58.    Lilly sold Zyprexa to Plaintiff with the knowledge that Plaintiff was purchasing

17  Zyprexa for a particular purpose. Further, Lilly knew, or should have known, that Plaintiff was

18  justifiably relying on Lilly's skill or judgment to select goods fit for Plaintiff's purpose.

19      59.    Lilly delivered goods that were unfit for Plaintiff's particular purpose, and thus

20  breached its implied warranty of fitness.

21      60.    Lilly's failure to select and sell a product which was reasonably safe for its intended

22  use proximately caused Plaintiff's injuries and monetary losses.

23  **COUNT EIGHT**

24  **(VIOLATION OF BUSINESS & PROFESSION CODE SECTION 17200)**

25      61.    Plaintiffs are informed and believe and allege that Defendant, by the acts and

26  misconduct alleged herein, violated Business and Professions Code sections 17200.

27      62.    California Business & Professions Code Section 17200 provides that unfair

28

- 13 -

competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

63.   The acts and practices described herein were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of Business & Professions Code Section 17200. The acts and untrue and misleading advertising set forth in presiding paragraphs are incorporated by reference and are, by definition, violations of Business & Professions Code Section 17200. This conduct includes, but is not limited to:

    a.   Representing to Plaintiff, Plaintiff's physician and the general public that Zyprexa was safe, fit and effective for human consumption, knowing that said representations were false, and concealing from the Plaintiff, Plaintiff's physician and the general public that Zyprexa has a serious propensity to cause injuries to users;

    b.   Engaging in advertising programs designed to create the image, impression and belief by consumers, physicians and others that the use of Zyprexa was safe for human use, had fewer side effects and adverse reactions than other methods for treating mental illness, constituted a convenient, safe form for treating mental illness and would not interfere with daily life, even though the Defendant knew these to be false, and even though the Defendant had no reasonable grounds to believe them to be true;

    c.   Purposely downplaying and understating the health hazards and risks associated with Zyprexa; and

    d.   Issuing promotional literature deceiving potential users of Zyprexa by relaying positive information and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of Zyprexa.

64.   These practices constitute unlawful, unfair and fraudulent business acts or practices,

1  within the meaning of California Business & Professions Code Section 17200, as well as unfair,

2  deceptive, untrue and misleading advertising as prohibited by California Business & Professions

3  Code Section 17500, as set forth herein.

4      65.    The unlawful, unfair and fraudulent business practices of Defendant described above

5  present a continuing threat to members of the public in that Defendant continue to engage in the

6  conduct described therein.

7      66.    As a result of their conduct described above, Defendant have been unjustly enriched.

8  Specifically, Defendant have been unjustly enriched by receipt of hundreds of millions of dollars in

9  ill-gotten gains from the sale and prescription of Zyprexa in California, and other states, sold in large

10  part as a result of the acts and omissions described herein.

11      67.    Because of the fraudulent misrepresentations made by Defendant as detailed above,

12  and the inherently unfair practice of committing a fraud against the Plaintiffs and public by

13  intentionally misrepresenting and concealing material information, the acts of Defendant described

14  herein constitute unfair or fraudulent business practices.

15      68.    Plaintiffs, pursuant to California Business & Professions Code Section 17203, seek

16  an order of this court compelling the Defendant to provide restitution, and to disgorge the monies

17  collected and profits realized by Defendant, and each of them, as a result of their unfair business

18  practices.

19      69.    Defendant's acts were willful, wanton, reckless and fraudulent; hence, Plaintiffs are

20  entitled to exemplary damages, *inter alia*.

21                    **COUNT NINE**

22      **(VIOLATION OF BUSINESS & PROFESSION CODE SECTION 17500)**

23      70.    Plaintiffs are informed and believe and thereon allege that Defendant, by the acts and

24  misconduct alleged herein, violated Business & Professions Code Section 17500.

25      71.    On behalf of the general public, Plaintiffs hereby seek restitution, as well as punitive

26  damages against Defendant for its violations of section 17500.

27      72.    California Business & Professions Code section 17500 provides that it is unlawful

28

                    - 15 -

1  for any person, firm, corporation or association to dispose of property or perform services, or to

2  induce the public to enter into any obligation relating thereto, through the use of untrue or misleading

3  statements.

4      73.    At all times herein mentioned, Defendant has committed the acts of disseminating

5  untrue and misleading statements as defined by <u>Business & Professions Code</u> Section 17500 by

6  engaging in the following acts and practices with intent to induce members of the public to purchase

7  and use Zyprexa:

8          a.    Representing to Plaintiff, Plaintiff's physicians and the general public that

9                Zyprexa was safe, fit and effective for human consumption, knowing that said

10                representations were false, and concealing from the Plaintiff, Plaintiff's

11                physicians and the general public that Zyprexa have a serious propensity to

12                cause injuries to users;

13          b.    Engaging in advertising programs designed to create the image, impression

14                and belief by consumers, physicians and others that the use of Zyprexa was

15                safe for human use, had fewer side effects and adverse reactions than other

16                methods for treating mental illness, constituted a convenient, safe form for

17                treating mental illness and would not interfere with daily life, even though the

18                Defendant knew these to be false, and even though the Defendant had no

19                reasonable grounds to believe them to be true;

20          c.    Purposely downplaying and understating the health hazards and risks

21                associated with Zyprexa; and

22          d.    Issuing promotional literature deceiving potential users of Zyprexa by

23                relaying positive information and manipulating statistics to suggest

24                widespread acceptability, while downplaying the known adverse and serious

25                health effects and concealing material relevant information regarding the

26                safety of Zyprexa.

27      74.    The foregoing practices constitute false and misleading advertising within the

28

- 16 -

1    meaning of <u>California Business & Professions Code</u> Section 17500.

2        75.    As a result of its false and misleading statements described above, Defendant has

3    been and will be unjustly enriched.  Specifically, Defendant has been unjustly enriched by receipt

4    of hundreds of millions of dollars from the sale and prescription of Zyprexa in California and other

5    states, sold in large part as a result of the false or misleading statements described herein.

6        76.    Pursuant to <u>California Business & Professions Code</u> Section 17535, Plaintiffs seek

7    an order of this court compelling the Defendant to provide restitution, and to disgorge the monies

8    collected and profits realized by Defendant, and each of them, as a result of their unfair business

9    practices, and injunctive relief calling for Defendant to cease such unfair business practices in the

10   future.

11       77.    Plaintiffs seek punitive damages, restitution and disgorgement of the monies collected

12   and profits realized by Defendant as a result of its false and misleading advertising.

13                                   **COUNT TEN**

14                               **(LOST CONSORTIUM)**

15       78.    Plaintiffs also claim a loss of consortium.

16                                    **DAMAGES**

17       79.    Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain

18   serious injuries and damages as a proximate result of Lilly's conduct.  These damages include, but

19   are not limited to, medical bills and associated expenses, lost earning capacity, lost income, lost love

20   and affection, pain, suffering and other special, general and consequential damages. Plaintiffs will

21   respectfully request the Court and Jury to determine the amount of the loss Plaintiffs have incurred

22   in the past and will incur in the future, not only from a financial standpoint, but also in terms of good

23   health and freedom from pain and worry.

24                               **PUNITIVE DAMAGES**

25       80.    At all times relevant hereto, Lilly actually knew of the defective nature of Zyprexa

26   as set forth herein and continued to design, manufacture, market, distribute and sell Zyprexa so as

27   to maximize sales and profits at the expense of the public's health and safety and in conscious

28

1  disregard of the foreseeable serious harm caused by Zyprexa. Lilly's conduct exhibits such an entire

2  want of care as to establish that its actions were a result of fraud, ill will, recklessness, and/or willful

3  and intentional disregard for the safety and rights of Plaintiffs, as well as the general public and/or

4  consumers of Zyprexa. Further, this conduct was pursued even though Lilly knew there was a

5  substantial risk their actions would result in significant harm to Plaintiffs. This conduct is

6  outrageous and Plaintiffs are therefore entitled to punitive damages.

7      WHEREFORE, Plaintiffs pray for judgment against Defendant, and each of them, as

8  follows:

9      a.    Past, present, and future special damages;

10     b.    Past, present, and future general damages;

11     c.    Punitive damages;

12     d.    Restitution;

13     e.    Disgorgement of profits;

14     f.    Prejudgment interest;

15     g.    Costs and attorneys' fees; and

16     h.    Such other and further relief as the court deems just and proper.

17                              **JURY DEMAND**

18     Plaintiffs, pursuant to the Federal Rules of Civil Procedure and all applicable local rules of

19  Court, demand a trial by jury.

20     **RESPECTFULLY SUBMITTED** this _____ day of June, 2008.

21                              PHILLIPS & ASSOCIATES

22

23                         By _____
                              Robert F. Clarke, Esq.
24                            3030 North Third Street, Suite 1100
                              Phoenix, Arizona 85012
25                            Attorneys for Plaintiffs

26

27

28

                              - 18 -

**"VIA FAX"**

JS 44 (Rev. 12/07)                          **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Knight, Diane; Knight, Morgan

**DEFENDANTS**

Eli Lilly and Company                     08 JUN 17  PM 3:24

CLERK, U.S. DISTRICT
SOUTHERN DISTRICT OF CALIF.

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ___ BY: ___ EC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.  DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert F. Clarke, Phillips & Associates, 3030 N Third St, Ste 1100,
Phoenix, AZ 85012; Tel: (602) 258-8900

Attorneys (If Known) **08 CV 1075 BEN CAB**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|                                          | PTF | DEF |                                                          | PTF | DEF |
|------------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                    | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                 | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country  | ☐ 3 | ☐ 3 | Foreign Nation                                           | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☒ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Diversity 28 U.S.C. § 1332

Brief description of cause:
Personal injuries arising from ingestion of prescription medication Zyprexa, a defective drug.

**VII. REQUESTED IN
COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S)
IF ANY**

(See instructions):    JUDGE  Hon. Jack B. Weinstein (E.D.N.Y)    DOCKET NUMBER  04-MDL-1596

DATE
06/16/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  152024  AMOUNT  $350.00  APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

TAL   6/17/08



JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
                                     Brief Description: Unauthorized reception of cable service

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 152024    — TC
* * C O P Y * *
June 17. 2008
15:24:18**

**Civ Fil Non-Pris**
USAO #.: 08CV1075
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: BC10622

**Total—>   $350.00**

FROM: DIANE & MORGAN KNIGHT
        VS.
        ELI LILLY & CO.